UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID A. PACKARD,<br>    Plaintiff,<br><br>       v.<br><br>KIMBERLY HINDEN, REGISTRAR<br>OF MOTOR VEHICLES,<br>MASSACHUSETTS, and DANIEL<br>A. GRABAUSKAS, SECRETARY<br>OF TRANSPORTATION,<br>MASSACHUSETTS,<br>    Defendants. | CIVIL ACTION NO.<br>05-11906-DPW |

MEMORANDUM AND ORDER
September 7, 2007

Plaintiff David A. Packard brought suit in this court under 42 U.S.C. § 1983 against officials of the Massachusetts Registry of Motor Vehicles (Registry) the Massachusetts Executive Office of Transportation (Transportation), and the Rhode Island Division of Motor Vehicles (Rhode island Division), seeking to bar revocation of his Massachusetts driver's license, vehicle registration, and vehicular insurance.  Packard claims that the revocation of his driver's license constitutes a due process and an *Ex Post Facto* Clause violation under the Fourteenth Amendment. After the Rhode Island Division successfully moved to dismiss the claims against it for lack of in personam jurisdiction, the remaining Massachusetts defendants moved for summary judgment.

1

Packard then petitioned for a preliminary injunction to enjoin the Registry and Transportation from suspending or revoking his driver's license.  For the reasons stated below, I conclude that the defendants did not breach Packard's procedural due process rights and did not violate the *Ex Post Facto* Clause.  Accordingly, I will grant the defendants' motion for summary judgment and deny Packard's motion for preliminary injunction.

## I. BACKGROUND

### A.   Facts

On January 23, 1985, Plaintiff David A. Packard received a motor vehicle ticket in East Providence, Rhode Island, for passing a school bus operating its flashing light in violation of R.I.G.L. § 31-20-12.  The ticket permitted the fine to be paid by mail and warned that "failure to comply will result in immediate suspension of your license."  The ticket, however, did not specify the amount due.  Packard, now claiming there was no information about a hearing recorded on the ticket, took no further action until February 2005, more than twenty years later.

On June 27, 1985, unbeknownst to Packard, the Rhode Island Division suspended Packard's right to drive in Rhode Island for failure to pay the ticket or appear at a hearing in regards to the driving violation.  The Rhode Island Division later reported Packard's failure to appear at the hearing to the National Driver Registrar (NDR), a computerized database established in 1994 by

49 U.S.C. § 30302 of information about drivers who have had their licenses suspended or revoked or who have been convicted of serious traffic violations.  NDR assists licensing officials of participating states, including Rhode Island and Massachusetts, with the exchange of information about the driving records of individuals.

In a notice dated February 14, 2005, the Registry cited to NDR and informed Packard that it would revoke his Massachusetts driver's license on March 16, 2005, pursuant to Mass. Gen. Laws ch. 90, § 22(c), for failure to appear at the Rhode Island hearing on June 27, 1985.  The notice advised Packard he could avoid revocation by contacting Rhode Island, obtaining a notice of reinstatement, and filing the reinstatement document with the nearest Registry office.

On February 24, 2005, Packard faxed to the General Counsel of Transportation a letter requesting information about the notice of revocation.  In his letter, Packard suggested that Rhode Island had made a reporting or data processing error.  He additionally requested that the revocation be rescinded.  Packard did not receive a response.

Instead, on March 9, 2005, the Registry sent a second notice of revocation, effective April 16, 2005, for an NDR Failure to Appear violation.  The notice included reference to the right to a hearing with the Registry and the right to appeal the case to

the Board of Appeal on Motor Vehicle Liability Policies and Bonds (Board of Appeal) within ten days of the effective date of the Registrar's order.

Contesting the Registry's pending action and requesting the revocation be rescinded, Packard sent letters to the Massachusetts Secretary of Transportation, the Attorney General of Rhode Island, and two officials in the Division.  On May 3, 2005, Packard received an email from an employee of the Rhode Island Division, explaining that the Rhode Island Traffic Tribunal (Traffic Tribunal) suspended Packard's license.  In a subsequent phone conversation, an official at the Traffic Tribunal informed Packard that an adjudication of his ticket had taken place on June 7, 1985, and that he had been found liable for $303.00.

On June 7, 2005, Packard received a letter from the Rhode Island Division which confirmed that the suspension of Packard's right to drive in Rhode Island resulted from Packard's failure to appear at a hearing on June 27, 1985, and his failure to pay a penalty of $303.00.  The Division stated that the hearing location and date had been written on the January 23, 1985, ticket, an assertion which Packard disputes.[1]  The Division instructed Packard to contact the Traffic Tribunal to resolve the

---

[1] Packard contends that the hearing location and date on the back of the ticket were written with a different pen and in a different handwriting than the front.

matter and thereafter to present documentation to the Division with a $75.00 reinstatement fee.

Around July 23, 2005, Packard received a Statutory Notice of Cancellation from Safety Insurance Company, his automobile insurer, effective August 14, 2005.  Explaining the reason for cancellation, the notice stated, "Your driver's license or auto registration has been under suspension or revocation during the policy period."

Contending that the suspension of his right to drive in Rhode Island and the subsequent revocation of his Massachusetts driver's license and automobile insurance violated his procedural due process rights under 42 U.S.C. § 1983 and the *Ex Post Facto* Clause, Packard filed his complaint in this court on September 20, 2005.

**B.   Procedural History**

Packard, proceeding *pro se*, named as defendants in their official capacities the Massachusetts Registrar of Motor Vehicles, the Massachusetts Secretary of Transportation, the Administrator of the Rhode Island Division of Motor Vehicles, and the Chief of Operator of Control of the Rhode Island Division of Motor Vehicles.  On October 27, 2005, the Rhode Island defendants moved to dismiss for lack of in personam jurisdiction.  On December 20, 2005, I granted the Rhode Island defendants' motion noting as well the teachings of *Younger v. Harris*, 401 U.S. 37

(1971), which counsels deference to state administrative enforcement and review procedures.

Meanwhile, in their November 15, 2005, answer, the Massachusetts defendants reported that the Registry had restored Packard's ability to renew his driver's license for 60 days so that he could seek relief from the Traffic Tribunal judgment. On December 20, I incorporated this development in an order directing the Commonwealth of Massachusetts to provide Packard with a temporary driver's license and advising that Packard should use the temporary driver's license to pursue his claims in Rhode Island. The case was stayed for 30 days.

On January 19, 2006, the parties filed separate status reports with this court. The defendants indicated that they had received no communication from Packard since December 20, despite attempts to contact him. The defendants learned from the Rhode Island Assistant Attorney General that Packard had not filed any motion with the Traffic Tribunal as of January 12. In his status report, Packard stated he had filed a Motion to Vacate with the Traffic Tribunal and had obtained a temporary Massachusetts driver's license. He attached the Motion to Vacate Judgment which was dated December 27, 2005. On January 24, the defendants filed a supplemental status report to clarify that Packard had not mailed the Motion to Vacate Judgment to the Traffic Tribunal until January 17.

I thereafter entered an order for a joint status report due

June 23, 2006.  On June 23, the parties again filed separately. The defendants noted that Packard had failed to return four phone messages, prompting the separate filing.  The defendants reported that a Rhode Island motion judge had refused to vacate the 1985 judgment against Packard, that Packard had appealed the decision to the Traffic Tribunal but had not attended the appellate panel hearing and had failed to provide a transcript of the motion hearing as required, and that an appellate panel of the Traffic Tribunal denied his appeal on May 31, 2006.  The defendants contended that the Traffic Tribunal's determination ended the parties' dispute about the validity of the initial suspension of Packard's driving rights in Rhode Island.  They further asserted that Packard failed to exhaust his administrative remedies in Massachusetts.

In his status report, Packard confirmed that a hearing in Rhode Island occurred on April 26, 2006 and that the motion judge, determining that notice of the 1985 hearing had been given, denied Packard's motion to vacate.  While Packard stated again in the status report that the Rhode Island defendants had violated his constitutional rights, he did not discuss his absence before the appellate panel of the Traffic Tribunal.

The defendants moved for summary judgment.  Packard responded with a motion for a preliminary injunction to prevent the defendants from suspending or revoking his driving rights and from making any report about his status to the NDR.

## II. DISCUSSION

**A.   Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists.  *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), *cert. denied*, 515 U.S. 1103 (1995).  Once the movant makes such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trialworthy issue.  *Id*.

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law."  *Santiago-Ramos v. Centennial P.R. Wireless Corp*., 217 F.3d 46, 52 (1st Cir. 2000).  A "genuine" issue is "one supported by such evidence that a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."  *Triangle Trading Co., Inc. v. Robroy Indus., Inc*., 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 427 (1st Cir. 1996)).  "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of

fact.  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

**B.  Analysis**

While the plaintiff, proceeding *pro se*, did not separate his causes of action in the complaint, fairly read, the complaint appears to rely most heavily on a contention that the defendants violated his procedural due process rights under 42 U.S.C. § 1983.  He also appears to contend that the *Ex Post Facto* Clause of the Constitution was violated.  Because I grant summary judgment to the defendants on the merits of the substantive claims, I do not formally resolve the defendants' Eleventh Amendment defense to Packard's request for damages.[2]

---

[2] The defendants contend that the Eleventh Amendment bars Packard's claim for compensatory and punitive damages against the Massachusetts officials.  The Eleventh Amendment states, "The Judicial powers of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  The Amendment applies also to suits brought by a state's own citizen.  *Ex parte Young*, 209 U.S. 123, 150 (1908) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

This protection extends to cases in which state officials acting in their official capacities, as the defendants are alleged to have done in this case, are named as defendants.  *Id*.  While a court may enjoin a state officer from enforcing a state law that violates the Constitution, *id.* at 161, the Eleventh Amendment permits only prospective relief that ensures future conduct meets constitutional requirements.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (observing a state official can be sued for injunctive relief under § 1983).  In other words, the Eleventh Amendment precludes the retroactive award of monetary damages against state officials for "'[i]t is not pretended that these payments are to come from the personal resources [of state officials]".  *Edelman v. Jordan*, 415 U.S.

### 1. Due Process Claim

The defendants argue they satisfied the Due Process Clause of the Fourteenth Amendment because they were entitled to rely on the Rhode Island's determination when revoking Packard's driver's license and because they provided Packard with a postrevocation administrative remedy, an appeal before the Board of Appeal. Additionally, the defendants argue this court lacks jurisdiction to hear the complaint because Packard did not exhaust his administrative remedies under Mass. Gen. Laws ch. 90, § 28.

The general rule that parties exhaust prescribed administrative remedies before seeking an audience with the federal courts "govern[s] the timing of federal-court decisionmaking." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The doctrine reflects deference to the special experience and expertise of agencies and promotes judicial efficiency. *Id.* at 145.

---

651, 665 (1974) (quoting *Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), *cert. denied*, 411 U.S. 921 (1973)). Rather, a retroactive reward will "involve substantial expenditures from the public funds of the state" and, as such, is barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 665.
    In the present case, Packard has not suggested that the Massachusetts defendants acted outside of their official capacities. Indeed, state law mandated their actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (noting a qualified immunity for state officials performing discretionary duties). In a § 1983 action against state officials acting in their official capacities, a federal court's remedial power is limited to prospective injunctive relief under the Eleventh Amendment. Thus, Packard's claim for damages would likely fail.

The exhaustion doctrine, however, does not apply to actions under 42 U.S.C. § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982). In accordance with congressional intent to protect people from unconstitutional action under state law, the "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Id.* at 516; *Borges Colon v. Roman-Abreu,* 438 F.3d 1, 19 (1st Cir. 2006) (following *Patsy*).[3] Indeed, the purpose of seeking a federal forum is to ensure a timely and disinterested analysis of a challenge to state process. *Monroe v. Pape*, 365 U.S. 167, 174 (1961). Thus, Packard was not required to exhaust his state administrative remedies to challenge the constitutionality of the Massachusetts process, and this court has jurisdiction to consider Packard's § 1983 claim. Nevertheless, the existence of an administrative process will be a factor to consider in determining the process plaintiff is due.

Because licenses, once issued, "may be essential in the pursuit of a livelihood," a state may not suspend a driver's license without providing the licensee the procedural due process

---

[3] In their discussion of administrative remedies, the defendants cite *Mackay v. Montrym*, 443 U.S. 1 (1979), and *Okereke v. Registry of Motor Vehicles*, No. 06-10884, slip op. at 4-5 (D.Mass. 2006)), but neither case involved a § 1983 claim. The defendants' reliance on *McCarthy v. Madigan*, 503 U.S. 140 (1992), is similarly misplaced because the facts there implicated a specific exhaustion requirement for claims brought by state prisoners.

required by the Fourteenth Amendment.  *Bell v. Burson,* 402 U.S. 535, 539 (1971); *Raper v. Lucey*, 488 F.2d 748, 752 (1st Cir. 1973) (quoting *Wall v. King*, 206 F.2d 878, 882 (1st Cir. 1953)). To succeed on a procedural due process claim, the plaintiff must demonstrate that "the procedures provided by the state in effecting the deprivation of liberty or property are [inadequate] in light of the affected interest."  *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991).

A court thus considers "the private interest that will be affected by the official action . . . the risk of an erroneous deprivation of such interest through the procedures used . . . and finally, the Government's interest."  *Mackey v. Montry*, 443 U.S. 1, 10 (1979) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  The reasonableness of a state's regulations depends on the nature of the particular liberty interest.  *Wall v. King*, 206 F.2d at 883 (holding that suspension of license for driving while intoxicated without presuspension hearing does not violate due process rights).  Further, "procedural due process in the administrative setting does not always require application of the judicial model."  *Dixon v. Love*, 431 U.S. 105, 115 (1977).

Packard's ability to operate a motor vehicle under a driver's license is the private interest implicated in this case. That interest is "a substantial one, for the Commonwealth will not be able to make a driver whole for any personal inconvenience

and economic hardship suffered by reason of any delay in redressing an erroneous suspension through postsuspension review procedures." *Mackey*, 443 U.S. at 11 (citing *Dixon*, 431 U.S. at 113). Further, the revocation of Packard's Massachusetts license is for an indefinite length of time. *See Mackey*, 443 U.S. at 12 (observing that length of time affects the substance of the private interest).

However, the Court in *Dixon* distinguished a driver's license from the more essential interest of social insurance payments at issue in the seminal case of *Goldberg v. Kelly*, 397 U.S. 254 (1970), and found that the suspension or revocation of a driver's license was "not so great as to require us 'to depart from the ordinary principle . . . that something less than an evidentiary hearing is sufficient prior to adverse administrative action.'" *Dixon*, 431 U.S. at 113 (quoting *Mathews*, 424 U.S. at 343). Thus, while Packard's interest in his driver's license was substantial, it was not so critical that the Massachusetts defendants were obligated to replicate a judicial model for resolving its revocation.

Second, the risk of erroneous deprivation of a driver's license under Mass. Gen. Laws ch. 90, § 22(c) is not great. Massachusetts law authorizes the Registry to enter into reciprocal agreements with other states to ensure interstate enforcement of motor vehicle violations. Mass. Gen. Laws ch.

90C, § 7.  The Registry is obligated to respond to a motor vehicle violation in another state with the same effect as if occurring in Massachusetts.  Mass. Gen. Laws ch. 90, § 22(c).  Thus, if another state suspends or revokes an individual's license, the Registry is required to revoke the license without a prior hearing.  *Id.*  Once the other state reinstates the license, the licensee can apply to the Registry for reinstatement of his Massachusetts license.  *Id.*

While Mass. Gen. Laws ch. 90, § 22(c) does not provide a prior hearing, postdeprivation procedural protections exist for individuals whose licenses are suspended or revoked.  The Supreme Court, examining Massachusetts law relevant in the present case, noted a postsuspension hearing was available immediately after the suspension of a license.  *See Mackey*, 443 U.S. at 12 (noting that the resulting duration of a potentially wrongful deprivation was limited by "the relative timeliness of the postsuspension review available").  Indeed, under Mass. Gen. Laws ch. 90, § 28, "[a]ny person aggrieved by a ruling or decision of the registrar" may appeal the decision within ten days to the Board of Appeal where "after a hearing, [the Board of Appeal will] order such ruling or decision to be affirmed, modified, or annulled."  *Id.*  The second notice Packard received from the Registry informed him of this right.

Similarly, when a driver receives notice of a cancellation of his vehicular insurance policy, the driver may file a written complaint with the Board of Appeal and will receive a hearing within five days to determine the validity of the cancellation. Mass. Gen. Laws ch. 175, § 113D.  The notice Packard received of his insurance cancellation informed him of this right.

Moreover, proceedings in Rhode Island have established that Packard *did* receive the opportunity for a presuspension hearing and also exercised the right to a post-suspension hearing.  On June 27, 1985, a Rhode Island hearing court convened to adjudicate Packard's January 23, 1985, ticket and found that Packard had failed to pay the fine for his violation.  Packard again obtained a hearing before a Rhode Island motion judge on April 26, 2006.  That judge, of course, affirmed the 1985 judgment finding, as Packard concedes.  Packard appealed this decision to the Traffic Tribunal which upheld the decision on May 31, 2006.[4]  The Massachusetts defendants could properly rely upon the Rhode Island process in revoking Packard's license.

Finally, Massachusetts has a substantial interest in securing public safety on its roads and highways and in promptly

---

[4] Packard's ability to contest the 1985 determination before final revocation of his license distinguishes the present case from *Pollard v. Panora*, 411 F.Supp 580 (D.Mass. 1976).  In *Pollard*, the court determined that Massachusetts law violated due process where it required revocation of a license for failure to appear in court and provided no possibility for a hearing on the default.  *Id.* at 589.  Here, Packard has had such an opportunity.

removing safety hazards including individuals who have committed motor vehicle offenses. *Dixon*, 431 U.S. at 114. More generally from a procedural perspective, the state has an interest in administrative efficiency which "would be impeded by the availability of a pretermination hearing in every case." *Id.*

Packard argues that his failure to appear at the Rhode Island hearing in June 1985 does not implicate a safety concern. But, this characterization of his violation misses the point. In 1985, Packard was cited for passing a school bus while its lights were flashing; that plainly was a safety violation. Moreover, while Packard argues that the subsequent procedures of the states violated his procedural due process rights, he does not dispute the underlying facts. Indeed, his very complaint concedes that the front portion of his car was past the front of the school bus before he stopped.

Massachusetts's membership in the NDR and its reciprocal enforcement agreements with other states substantially serve the important interests of safety and administrative efficiency. Massachusetts was justified in relying on the determination from the Rhode Island hearing. Indeed, the Full Faith and Credit provision of the United States Constitution envisions and directs reliance on the integrity of another state's judicial proceedings. U.S. CONST. art. IV, § 1. *See also* 28 U.S.C. § 1738.

While a significant private interest exists in this case, this liberty is not absolute. *Wall v. King*, 206 F.2d at 883. The procedural protections employed by Massachusetts make an erroneous deprivation unlikely. Massachusetts initially relied on a presuspension hearing in Rhode Island and afforded Packard the right to appeal his revocation. Packard's hardship "must be borne in deference to the greater public interest served" in the state's concern for safeguarding lives and property. *Id.* No due process violation has been made out here.

### 2. *Ex Post Facto* Claim Argument

The short answer to Packard's *Ex Post Facto* argument regarding Mass. Gen. Laws ch. 90, § 7, and Mass. Gen. Laws ch. ch. 90, 22(c), is that revocation of a driver's license is not a criminal punishment. To be sure, the United States Constitution prohibits any state from passing an *ex post facto* law. U.S. CONST. art. I, § 10, cl. 2. While the Latin phrase "*ex post facto*" means "after the fact," this clause applies "only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990) (citing *Calder v. Bull*, 3 Dall. 386, 390-92 (1789)). Thus, a law "which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment . . . , or which deprives one charged with a crime of any defense is prohibited as *ex post facto*." *Beazell v. State of Ohio*, 269 U.S. 167, 169-70

(1925).  Neither Mass. Gen. Laws ch. 90C, § 22, nor Mass. Gen. Laws ch. 90, § 22(c), however, is a penal statute.  Consequently, the defendants did not violate the *Ex Post Facto* Clause.[5]

### III. CONCLUSION

For the reasons set forth more fully above, the defendants' motion for summary judgment on all counts is GRANTED and the plaintiff's motion for a preliminary injunction is DENIED.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[5] Packard also alleges that the revocation of his license twenty years after the offense violates the statute of limitations in Mass. Gen. Laws ch. ch. 227, § 63.  This statute applies only to criminal proceedings and therefore is irrelevant.